IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| RANDY CHRISTIANSON,<br><br>                    Plaintiff,<br><br>        vs.<br><br>UNION PACIFIC RAILROAD CO.,<br><br>                    Defendant. | **8:23CV247**<br><br><br>**MEMORANDUM AND ORDER** |

This matter comes before the Court on Defendant's Motion for Summary Judgment. Filing No. 59. Because the undisputed evidence shows Plaintiff failed to timely file his administrative claim of discrimination, the Court grants summary judgment for Defendant.

## I.    BACKGROUND

Plaintiff, Randy Christianson, worked for Defendant, Union Pacific Railroad Company, as a locomotive mechanical foreman. Filing No. 62-1 at 1. In late 2017, he fell on the job, and Union Pacific subsequently required him to undergo a fitness for duty evaluation. *Id.* at 6. On February 13, 2018, Union Pacific imposed medical restrictions on Christianson which it claimed could not be accommodated, thereby effectively ending his employment. Filing No. 62-6 at 3. Christianson alleges that in carrying out the fitness for duty process, Union Pacific discriminated against him in violation of the Americans with Disabilities Act. *See generally* Filing No. 10.

Christianson completed and signed a "Charge of Discrimination" form addressed to the Equal Employment Opportunity Commission (EEOC) on July 12, 2018. Filing No. 10-10 at 7. His attorney prepared a cover letter and fax cover sheet to the EEOC dated

July 16, 2018.  *Id.* at 6.  The fax cover sheet reflects the EEOC's correct fax number and indicates it was sent to "Intake Department" from a paralegal at his attorney's law firm. *Id.* at 9.  However, Christianson's attorney cannot produce a fax confirmation sheet, and the EEOC has no record of having received the form.  Rather, on February 6, 2023, the EEOC informed Christianson's attorney that it had no record of the fax filing.  Filing No. 10-11 at 2.  The EEOC dismissed the charge as untimely filed, and Christianson subsequently filed the present lawsuit.

## II.    ANALYSIS

### A.  Standard of Review

Summary judgment is appropriate when, viewing the facts and inferences in the light most favorable to the nonmoving party, the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" show that "an adverse party cannot produce admissible evidence to support" a fact essential to the nonmoving party's claim.  Fed. R. Civ. P. 56(c)(1)(A) & (B).  The plain language of Rule 56(c) mandates the entry of summary judgment after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"The movant 'bears the initial responsibility of informing the district court of the basis for its motion, and must identify 'those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact.'" *Torgerson v. City of*

*Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting *Celotex*, 477 U.S. at 323).  If the movant does so, "the nonmovant must respond by submitting evidentiary materials that set out 'specific facts showing that there is a genuine issue for trial.'"  *Id.* (quoting *Celotex*, 477 U.S. at 324).  A "genuine" issue of material fact exists "when there is sufficient evidence favoring the party opposing the motion for a jury to return a verdict for that party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

The evidence must be viewed in the light most favorable to the nonmoving party, giving the nonmoving party the benefit of all reasonable inferences.  *Kenney v. Swift Transp., Inc.*, 347 F.3d 1041, 1044 (8th Cir. 2003).  "In ruling on a motion for summary judgment, a court must not weigh evidence or make credibility determinations."  *Id.* "Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate."  *Koehn v. Indian Hills Cmty. Coll.*, 371 F.3d 394, 396 (8th Cir. 2004).  If "reasonable minds could differ as to the import of the evidence," summary judgment should not be granted.  *Anderson*, 477 U.S. at 251.

### B. Christianson Did Not Timely File Suit

The parties agree Christianson was required to file a charge of discrimination with the EEOC within 300 days from Union Pacific's allegedly unlawful act.  *See* 42 U.S.C. § 2000e-5(e); 42 U.S.C. § 12117.  Christianson does not specify the exact date he believes the unlawful act occurred but does agree that if the fax filing attempt in 2018 is deemed insufficient, his charge was not timely.

Christianson argues his attorney timely filed the EEOC form by faxing it to the EEOC's correct fax number on July 16, 2018.  In support of his amended complaint, Christianson produced a fax cover sheet and an affidavit from the paralegal at his

3

attorney's law firm.  The fax cover sheet indicates that the paralegal intended to send the form via fax to the EEOC's fax number with a 913 (Kansas City) area code.[1] Filing No. 10-10.  The paralegal's declaration stated that her role as paralegal was to "draft charges of discrimination, coordinate the client's review of them, and then, upon [the attorney's] approval, file them with the EEOC."  Filing No. 10-2 at 2.  The paralegal averred that her standard procedure for fax filing was to "receiv[e] the signed charge from the client, draft[] a cover letter and fax cover sheet, and then fax[] the charge to the appropriate office at the [EEOC]."  Id.  She stated she would have followed those procedures in Christianson's case as well.  Id.

In opposing summary judgment, Christianson produced a second declaration from the paralegal.  This declaration stated that the paralegal believed it was "not uncommon for the EEOC to lose complaints" so she "thought nothing of receiving no response" to Christianson's faxed form.  Filing No. 67-14.

Union Pacific then deposed the paralegal.  Filing No. 62-7.  It asked her to elaborate about her procedure for sending faxes in 2018.  Filing No. 62-7 at 5–6.  She stated, "[N]ormally I would confirm – I would have, you know, a fax confirmation sheet that I would staple with the charge of discrimination."  Filing No. 62-7 at 5; 10 (verifying it was the law firm's procedure to maintain the fax cover sheet after sending).  The paralegal testified that there was no fax confirmation sheet in Christianson's file.  Filing No. 62-7 at 8.  She also explained that she did not have a specific recollection of sending the fax with Christianson's form on July 16, 2018.  Filing No. 62-7 at 11.  Rather, she believed it must

---

[1] Union Pacific does not dispute that this was the correct fax number but claims the EEOC never received the fax.

4

have been sent correctly because of her procedures referenced earlier which she claimed to always have followed.  Filing No. 62-7 at 5.

This undisputed evidence shows that Christianson did not timely file his charge of discrimination with the EEOC.  There is no evidence to support that Christianson's attorney's office actually faxed the form to the EEOC.  Rather, the evidence shows only that the paralegal drafted a fax cover sheet with the correct fax number.  However, there is no evidence she actually sent the fax.  Contrary to her usual procedure of attaching the fax confirmation sheet showing the fax successfully went through, here, the paralegal did not have a fax confirmation sheet or any other documentation showing the fax was sent.

Christianson argues there is a dispute of fact over whether the fax was timely sent. He argues the paralegal's statement in her first declaration that she faxed the charge in 2018 creates a dispute of fact.  But in her deposition, the paralegal elaborated that she had no specific recollection of sending the fax with Christianson's form.  Rather, her belief the fax must have been sent was based on the fact she always followed the same procedures for faxes and because it was not unusual not to hear from the EEOC after filing.  But the Court cannot rely on the paralegal's usual procedures as evidence of proper filing because here she did not follow those procedures; there is no fax confirmation sheet attached to the fax cover sheet and form as was the usual practice.

This contrasts with cases upon which Christianson relies.  For example, in *Laouini v. CLM Freight Lines, Inc.*, 586 F.3d 473, 475 (7th Cir. 2009), the trial court granted summary judgment to the employer–defendant on the basis that the plaintiff had failed to timely file his EEOC charge.  The plaintiff's faxed EEOC form was not file stamped by the EEOC until four days after the deadline.  *Id.*  Laouini, however, argued he had sent the

fax on the last day of the limitations period, and produced "a copy of a printout from counsel's fax machine confirming that a three-page document had been successfully transmitted" on the day of the deadline. *Id.* at 474. In reversing the trial court's grant of summary judgment to the employer, the Seventh Circuit Court of Appeals stated that "the fax confirmation creates a factual dispute sufficient to preclude summary judgment." *Id.* at 477–78. By contrast, there is no fax confirmation sheet which can create a similar factual dispute in Christianson's case.

Christianson also argues there is a dispute of fact because the EEOC may have received the fax but lost it. He argues this was not uncommon during the days of fax filing with the EEOC. But there is no evidence to support this theory, other than Christianson's attorney's and paralegal's belief that the EEOC sometimes lost filings. There is no specific evidence that was what occurred in this case. Combined with the lack of evidence that Christianson's attorney actually sent the fax, the lost-form theory amounts to little more than speculation and is inadequate to create a dispute of fact for summary-judgment purposes. *See Torgerson*, 643 F.3d at 1042 ("[T]he nonmovant must respond by submitting *evidentiary* materials that set out *specific facts* showing that there is a genuine issue for trial." (emphasis added) (internal quotation marks and citation omitted)).

Because the undisputed facts demonstrate Christianson's attorney did not timely file his charge of discrimination, Union Pacific is entitled to summary judgment.

### C. No Basis for Equitable Tolling

In the alternative, Christianson argues the deadline for filing his charge of discrimination with the EEOC should be tolled. He argues equitable tolling is appropriate because his failure to file was due to excusable neglect.

6

"The filing of a timely charge with the EEOC is not a jurisdictional prerequisite to a suit in federal court." *Lawrence v. Cooper Communities, Inc.*, 132 F.3d 447, 451 (8th Cir. 1998). "Rather, it is a condition precedent and, 'like a statute of limitations, is subject to waiver, estoppel, and equitable tolling.'" *Id.* (quoting *Zipes v. Trans World Airlines*, 455 U.S. 385, 393 (1982)). "It is clear that equitable tolling is premised on the plaintiff's excusable neglect, which may or may not be attributable to the defendant." *Id.* (quoting *Anderson v. Unisys Corp.*, 47 F.3d 302, 306 (8th Cir. 1995). "Federal courts have typically extended equitable relief only sparingly." *Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 96 (1990).

There are no circumstances which constitute excusable neglect in this case. Christianson's attorney failed to send or confirm the fax had been properly sent, but this is ordinary negligence rather than the type of extraordinary circumstance which would warrant tolling. Courts have repeatedly held that counsel's failure to meet a deadline does not serve to equitably toll the limitations period. *See, e.g.*, *Gilbert v. Sec'y of Health & Hum. Servs.*, 51 F.3d 254, 257 (Fed. Cir. 1995) ("The negligence of Gilbert's attorney does not justify applying equitable tolling."); *Irwin*, 498 U.S. at 96 ("Petitioner urges that his failure to file in a timely manner should be excused because his lawyer was absent from his office at the time that the EEOC notice was received, and that he thereafter filed within 30 days of the day on which he personally received notice. But the principles of equitable tolling described above do not extend to what is at best a garden variety claim of excusable neglect."); *Westin v. Mercy Med. Servs., Inc.*, 994 F. Supp. 1050, 1060–61 (N.D. Iowa 1998) ("Moreover, Westin's claimed reliance on counsel cannot excuse her failure to timely file suit when the reason offered for tolling is at best a garden variety claim

7

of excusable neglect." (internal citations and quotation marks omitted)).  The Court will not equitably toll the limitations period.

### D. No Basis for Equitable Estoppel

In the second alternative, Christianson argues equitable estoppel is appropriate to toll the limitations period because Union Pacific was aware of his claim but failed to alert Christianson that he had not timely filed an EEOC charge.

In the context of statutes of limitation, the doctrine of equitable estoppel "comes into play when a defendant takes active steps to prevent a plaintiff from suing on time." *Dring v. McDonnell Douglas Corp.*, 58 F.3d 1323, 1329 (8th Cir. 1995).  "The equitable estoppel inquiry focuses on the employer/defendants' conduct."  *Garfield v. J.C. Nichols Real Est.*, 57 F.3d 662, 666 (8th Cir. 1995)

There is no evidence Union Pacific took steps to prevent Christianson from suing on time.  Christianson points to an email exchange his attorney had with Union Pacific on August 30, 2018, a month and a half after Christianson's attorney had failed to send his fax filing.  Filing No. 10-3.  In the email, Christianson's attorney mentions several cases he believes are pending including Christianson's in the context of discussing settlement.  Filing No. 10-3 at 3.  The email does not reference the filing of the EEOC complaint, nor does Union Pacific make any specific statement about the timeliness or lack of Christianson's filing.  This falls short of the "active steps" the employer would have had to have taken to warrant equitable estoppel.  There is no evidence Union Pacific was aware the EEOC did not have Christianson's complaint at that time, let alone that it also then prevented Christianson from making a timely filing.

Accordingly, there is no basis to equitably estop Union Pacific from asserting its limitations defense.

### D.  The Continuing Violation Doctrine Does Not Apply

Lastly, Christianson argues his untimely claim is saved by application of the continuing violation doctrine.

The so-called "continuing violation doctrine" allows the limitation period to be tolled for alleged discriminatory conduct that is deemed continuing in nature so long as at least some of that conduct occurred during the 300-day period.  *See, e.g.*, *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380–81 (1982) (holding with respect to Fair Housing Act, that a "pattern, practice, and policy" of discrimination that is maintained into the limitations period is a continuing violation).  However, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges."  *Grigg v. Union Pac. R.R. Co.*, No. 4:21CV3124, 2023 WL 1864424, at *3 (D. Neb. Feb. 9, 2023) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 n.9 (2002)).  "When [a plaintiff] seeks redress for discrete acts of discrimination or retaliation, the continuing violation doctrine may not be invoked to allow recovery for acts that occurred outside the filing period."  *Morgan*, 536 U.S. at 113.

Continuing violations are commonly found in hostile-work-environment or pattern-and-practice class-action claims.  *See, e.g.*, *Grigg*, 2023 WL 1864424, at *3 (pattern-and-practice class-action suit).  This case is neither.  Although Christianson makes a passing attempt to reframe his case as involving Union Pacific's "pattern and practice of discriminatory policies," Filing No. 65 at 31, a review of the operative pleadings reveals his is plainly a case of discrete discriminatory acts.  His complaint was based on Union

Pacific "order[ing] him to submit to a functional capacity examination, issu[ing] restrictions against him, and/or fail[ing] to accommodate those restrictions." Filing No. 10 at 6. These are all textbook discrete discriminatory acts, not the type of on-going violations found in a pattern-or-practice case. Accordingly, the continuing violations doctrine is inapplicable and does not serve to toll the limitations period.

## III.    CONCLUSION

For the foregoing reasons, Christianson did not timely file his charge with the EEOC, there is no basis to toll the limitations period, and Union Pacific is entitled to summary judgment on that basis.

IT IS ORDERED:

1. Defendant's Motion for Summary Judgment, Filing No. 59, is granted.

2. Defendant's motions to strike, Filing No. 73; Filing No. 80, and motion in limine, Filing No. 86, are denied as moot.

3. The Court will enter a separate judgment.


Dated this 5th day of September, 2025.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge